*NOT AN*
*ORIGINAL*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
        FILED

      NOV 2 3 2009

CLERK, U.S. DISTRICT COURT
By _____
              Deputy
```

| | |
|---|---|
| NANCY GIAMMARCO | § |
| | § |
| Plaintiff | § |
| | § |
| V. | § |
| | § |
| RAPP COLLINS WORLDWIDE | § |
| LIMITED PARTNERSHIP and | § |
| STASEY TACKETT | § |
| | § |
| Defendant | § |

C.A. NO.

3:09cv 2231-M

# 36343

**3-09CV2231-M**

## COMPLAINT

Plaintiff, complaining of Defendants Rapp Collins Worldwide Limited Partnership ("RCW") and Stasey Tackett ("Tackett"), would show as follows:

### Parties

1.　　Plaintiff is an individual.

2.　　RCW is a limited partnership which may be served through The Prentice-Hall Corp., Inc., 301 Brazos Street, Suite 1050, Austin, Texas 78701. Tackett is an individual and may be served at 1660 Westridge Circle North, Irving, Texas 75038.

### Jurisdiction

3.　　This Court has jurisdiction over this claim under 28 U.S.C. §1331 based on Plaintiff's claims under the Americans with Disabilities Act. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's libel claim under Texas law.

4.　　Venue is proper.

COMPLAINT -- Page 1

Facts

5.    Plaintiff was employed by RCW beginning in June 14, 2007 and ending February

2, 2009, under the supervision of Tackett.

6.    In and after June 2007, Plaintiff was disabled, had a record of disability and was

regarded as disabled based upon her diagnosed chronic depression causing frequent sleep

disturbance and impairing her concentration and interaction and communication with others.

Plaintiff's being so disabled was known to Tackett no later than July 2007 and based upon

remarks by Tackett reflecting disability discrimination concerning such depression beginning no

later than January 2008 and continuing up to February 2009, including but not limited to the

following:

a.    I'm not going to change my management style to accommodate your depression

b.    I'm sorry but I am not responsible for your depression

c.    You're the most joyful depressed person I know

d.    You've talked yourself into depression

e.    You're up, you're down, it's always about you

f.    Believe me, there are people around here who have real problems

g.    You use your depression to get attention

h.    I feel you have used that (depression) to manipulate me.

Tackett frequently repeated remarks of the kinds referred to in subparagraphs a through h

Tackett also otherwise verbally harassed Plaintiff and created a hostile work environment by

referring to her as "needy," alternating between a passive aggressive manner of supervision,

using unnecessarily pejorative terms in her criticism of Plaintiff, including referring to Plaintiff

COMPLAINT – Page 2

as a liar and conniving bitch, threatening Plaintiff with termination for personal reasons, blaming

Plaintiff for one or more problems for which Plaintiff was not responsible.

7.    Between no later than July 2007 and February 2009, RCW, through Tackett,

subjected Plaintiff to a hostile work environment, and harassed her, and discriminated against

her, the remarks referred to in paragraph 6, and other aspects of her supervision of Plaintiff,

including frequent use of pejorative terms. Plaintiff complained to Tackett that she was being

unfairly abused by Tackett on account of her depression and asked that Tackett cease such abuse

and conduct her supervision of Plaintiff in a non-harassing manner. Plaintiff thereby sought

reasonable accommodations to her disability from Tackett in the forms of avoiding, or at least

minimizing, the abusive aspects of her treatment of Plaintiff, but such accommodations were all

denied by Tackett without any discussion whether they were reasonable accommodations to her

disability. After Plaintiff so complained and sought reasonable accommodations to her disability,

RCW further subjected Plaintiff to retaliation under the circumstances reflected in paragraphs 8

and 9.

8.    While Plaintiff was subjected to a hostile work environment and harassed by

Tackett between no later than July 2007 and February 2009, she complained to Aimee Willems, a

representative of RCW's human resources function, of misconduct by Tackett of the kinds

referred to in paragraphs 6 and 7. Tackett thereafter expressed her resentment for any complaint

by Plaintiff concerning her misconduct, including by the remark that "you have talked to Aimee

(in human resources) about this."

9.    After Plaintiff complained to Tackett about Tackett's treatment of her, and her

abusive supervision and harassment on the basis of disability in particular, Plaintiff was denied

COMPLAINT – Page 3

transfer away from Tackett in November 2008, subjected to unjustified discipline between

November 2008 and January 2009 in the form of a performance improvement plan, and even

after she satisfied that plan, was terminated on February 2, 2009. Specifically :

a.    On or about Friday, November 7, 2008, Plaintiff was asked to be on call the entire

weekend by Tackett for a new business pitch with a customer named CORZO. At

approximately 8:00 p.m. Friday evening while at home, Plaintiff started

experiencing flu-like symptoms. Later that night, when Plaintiff was contacted by

Tackett regarding the project, Plaintiff advised her of feeling ill with flu-like

symptoms. On Saturday, November 8, 2008, Plaintiff communicated with Tackett

about the client's progress as well as work Plaintiff was doing on her daughter's

computer as a personal favor to Tackett. Plaintiff waited until approximately 1:00

a.m. on November 9, 2008 for pitch materials to be emailed to her to perform

quality assurance duties on them. The materials were not delivered until Sunday

morning, November 9, 2008, when they were sent to Plaintiff's email by Tackett

at 7:11 a.m. and followed by a text and call to Plaintiff's cell phone at 7:12 a.m.

Because Plaintiff was ill the evening before and had stayed up very late waiting on

the material to be sent, Plaintiff did not hear the ring-tone of her cell phone

announcing either the text or the call. Further efforts by Tackett to reach her later

that morning were unsuccessful until after 9:00 a.m., when Plaintiff

acknowledged that Plaintiff had missed her email and one or more calls because

of sleeping and at least one additional call while Plaintiff was in the shower.

Though Plaintiff offered to join in completing the project and actually went into

COMPLAINT – Page 4

the office to be more available and proactive, Tackett refused her assistance until approximately 5:00 p.m. Tackett made offensive, angry, and sarcastic remarks to Plaintiff and to others regarding Plaintiff not being available earlier that morning. Plaintiff complained to Tackett about the abusive behavior toward her and specifically how it was adversely affecting her health. In response, Tackett accused Plaintiff of being disrespectful.

b.  On November 11, 2008, Plaintiff went to the office of RCW's human resources function and spoke with human resources representative Cheryl Lee ("Lee") and asked for a transfer out of Tackett's department. Plaintiff specifically requested that her request be kept confidential, stating that Plaintiff felt she would be fired if it got out. On November 12, 2008, Plaintiff emailed her resume to Lee with a note advising of stress imposed by the demands of the job under Tackett and its causing her health to suffer. Plaintiff advised that she was to have a sleep study because of problems sleeping. The sleep study was performed on November 14, 2008. The results were provided to Lee on December 9, 2008, and documented poor sleep efficiency. Plaintiff's request for transfer away from Tackett was not kept confidential, but disclosed to Tackett.

c.  On November 13, 2008, Plaintiff was denied transfer without any discussion of the reasonableness of Plaintiff's request for transfer as an accommodation to her disability. No reason was given for the denial of transfer other than a false claim that no other position was open for which Plaintiff was qualified.

COMPLAINT – Page 5

d.    On November 24, 2008, Plaintiff was placed on a 30-day performance

improvement plan ("PIP") by Ralston. Unsatisfactory performance related in the

PIP as the basis for it was alleged to include Plaintiff being disrespectful,

insubordinate and guilty of inappropriate behavior. The significant majority of the

events alleged represented  Tackett's version of the events of November 7 through

9, 2008. In the PIP meeting, Plaintiff responded to the allegations by advising

Ralston that Tackett had a violent temper, including rants, cussing and other

conduct which caused her great stress and anxiety. Ralston specifically asked

Plaintiff if she was complaining of a "hostile work environment." Plaintiff

responded in the affirmative that it felt extremely hostile to her. Plaintiff

subsequently provided details to Ralston concerning medication related to her

depression.

e.    Following the PIP, Tackett increased her hostile behavior toward Plaintiff by

refusing to speak to her, glaring at her and demanding explanations on almost

every professional decision made. In spite of this retaliatory behavior by Tackett,

Plaintiff successfully completed the PIP on or about January 9, 2009, as confirmed

by Ralston and Tackett.

f.    Plaintiff was terminated from employment on February 2, 2009 for alleged

"unsatisfactory job performance." The reason given by RCW for Plaintiff's

termination was so unspecific that it did not qualify as a legitimate non-

discriminatory non-retaliatory basis for termination. It was in any case pretextual

as Plaintiff's job performance had never been an issue other than as falsely alleged

in connection with the PIP. The specific event used as the pretext was Plaintiff

allegedly missing a deadline for a project on Friday, January 30, 2009 and

assigning the work to others to complete when it was her responsibility. In fact,

Plaintiff did complete the project, though only minutes late, and on account of

equipment failure on one of the personal computers she was using on the project

and an impossible deadline for the project that required her to engage two other

associates in order to successfully complete the project. Even if the reason given

for Plaintiff's termination was not pretextual, and true, bias against Plaintiff on

the ground of her disability, and retaliation for her complaints of abusive conduct

on the part of Tackett, was a motivating factor in her termination.

10.     In April 2009, Plaintiff filed a charge of discrimination complaining that her

treatment prior to her termination, and her termination, was discriminatory and retaliatory.

11.     Plaintiff has suffered a loss of income and benefits and emotional distress on

account of RCW's termination of her employment and also suffered emotional distress on

account of the harassment and creation of a hostile work environment by Tackett, the denial of a

transfer away from Tackett and the imposition of discipline upon her prior to her termination.

12.     On January 13, 19 and 21, 2009, while Plaintiff was employed by RCW, Tackett

made written statements on a website maintained by Plaintiff which were false and defamatory of

Plaintiff, consisting of the following:

a.      You are a game playing man who is just looking for his next piece of ass and

        apparently your standards are very low if you are picking up chicks in elevators,

        you make us sick.

COMPLAINT – Page 7

b.      ...I can see you are just like a guy who can't keep it in his pants....if you want to be

a guy, go get surgery.

c.      You are a conniving little freak.

13.      Plaintiff has suffered a loss of reputation and emotional distress on account of the

libel by RCW, through Tackett, referred to in paragraph 12.

Claims

14.      Plaintiff, for her first cause of action, would show that RCW violated the

Americans with Disabilities Act by harassing her and creating a hostile environment, by refusing

to reasonably accommodate her, including engaging in an interactive process for that purpose, by

discriminating against her and by retaliating against her, and is liable to her for her actual

damages, attorney's fees, prejudgment interest and costs. RCW is also, on account of the reckless

violation of Plaintiff's right to free of disability discrimination, liable to Plaintiff for punitive

damages.

15.      Plaintiff, for her second cause of action, would show that RCW, through Tackett,

and Tackett, individually, libeled her, and is liable to her for her actual damages, prejudgment

interest and costs. RCW and Tackett are also, on account of the nature of the libel of Plaintiff,

liable to Plaintiff for punitive damages.

16.      Plaintiff demands a jury.

WHEREFORE, Plaintiff prays that she have judgment for all appropriate relief.

COMPLAINT – Page 8

Respectfully submitted,

Robert E. Goodman, Jr.
TSB No. 08158100

James N. Francis
TSB No. 07357000

Francis Goodman PLLC
8750 N. Central Expressway, Suite 1000
Dallas, Texas 75231
(214) 368-1765
(214) 368-3974 (telecopy)

COUNSEL FOR PLAINTIFF